**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

|  |  |
|---|---|
| )<br>) | **Case Number**:  15-cv- 6143 |
| UNITED STATES OF AMERICA,   )<br>) | |
| Plaintiff,   )<br>) | |
| v.   )<br>) | **Judge:  Hon. James B. Zagel** |
| )<br>) | **Magistrate Judge:  Hon. Susan E.** |
| NAVISTAR INTERNATIONAL CORP., and   )<br>NAVISTAR, INC.   ) | **Cox** |
| )<br>Defendants.   ) | |

**AMENDED[1] COMPLAINT**

The United States of America, by authority of the Attorney General and at the request of

the Administrator of the United States Environmental Protection Agency ("EPA"), files this

Complaint and alleges as follows:

**NATURE OF ACTION**

1.    This is a civil action for injunctive relief and civil penalties under the Clean Air Act

("CAA"), 42 U.S.C. §§ 7401-7671, arising from the introduction of heavy-duty diesel engines

("HDDEs") into commerce that were not covered by the certificates of conformity required

under Section 203(a)(1) of the CAA, 42 U.S.C. § 7522(a)(1).

---

[1]  The United States is filing this Amended Complaint to correct errors in Paragraphs 40 and 41
and its Prayer for Relief.  The United States is seeking penalties of up to $37,500 per violation,
not $37,500 per day for each violation.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Sections 204 and 205 of the CAA, 42 U.S.C. §§ 7523 and 7524.

3.     Venue is proper is this District pursuant to 28 U.S.C. §§ 1391 and 1395 and Section 205 of the CAA, 42 U.S.C. § 7524.

## DEFENDANTS

4.     Navistar International Corporation ("NIC") is incorporated under the laws of the State of Delaware.

5.     NIC is a "person" within the meaning of Section 302(e) of the CAA, 42 U.S.C. § 7602(e).

6.     NIC is a "manufacturer" within the meaning of Section 216(1) of the CAA, 42 U.S.C. § 7550(1).

7.     NIC's principle place of business is located at 2701 Navistar Drive, Lisle, Illinois 20532.

8.     At all times relevant to this action, NIC was engaged in the business of manufacturing, selling, offering for sale, introducing or delivering for introduction into commerce (or causing any of the foregoing with respect to) on-highway HDDEs.

9.     Navistar, Inc. ("Navistar") is incorporated under the laws of the State of Delaware.

10.    Navistar is a "person" within the meaning of Section 302(e) of the CAA, 42 U.S.C. § 7602(e).

11.    Navistar is a "manufacturer" within the meaning of Section 216(1) of the CAA, 42 U.S.C. § 7550(1).

12.   Navistar's principle place of business is located at 4201 Winfield Road, Warrenville, Illinois 60555.

13.   At all times relevant to this action, Navistar was engaged in the business of manufacturing, selling, offering for sale, introducing or delivering for introduction into commerce (or causing any of the foregoing with respect to) on-highway HDDEs.

## STATUTORY AND REGULATORY BACKGROUND

14.   This action arises under Title II of the Act, as amended, 42 U.S.C. § 7521, *et seq*., and the regulations promulgated thereunder relating to exhaust emissions standards for new motor vehicle engines.

Congressional Findings, Purposes, and Mandates

15.   In enacting the CAA, Congress found that "the increasing use of motor vehicles . . . has resulted in mounting dangers to the public health and welfare."  42 U.S.C. § 7401(a)(2).

16.   Through the CAA, Congress intended "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population."  42 U.S.C. § 7401(b)(1).

17.   The CAA requires EPA to prescribe and revise standards applicable to the emission of any air pollutant from new motor vehicles or new motor vehicle engines that, in EPA's judgment, causes or contributes to air pollution which may reasonably be anticipated to endanger public health or welfare.  42 U.S.C. § 7521(a)(1).

The Emissions Standards

18.   EPA has promulgated, and from time to time revised, emissions standards at 40 C.F.R. Part 86, Subpart A.

19. In 2001, EPA adopted more stringent standards limiting the emission of oxides of nitrogen and non-methane hydrocarbons from HDDEs. All HDDEs were required to comply with those more stringent standards beginning no later than model year 2010. 66 Fed. Reg. 5002 (Jan. 18, 2001); *see also* 40 C.F.R. §§ 86.007-11(a)(1) and 86.007-11(g).

Certificates of Conformity

20. Section 203(a)(1) of the Act, 42 U.S.C. § 7522(a)(1), prohibits manufacturers of new motor vehicle engines from selling, offering for sale, introducing or delivering for introduction into commerce (or causing any of the foregoing with respect to) any new motor vehicle engine unless the engine is covered by a certificate of conformity ("COC") issued by EPA under regulations prescribed by the CAA.

21. The certification process allows EPA to ensure that every HDDE introduced into commerce satisfies applicable emission standards.

22. To obtain a COC, an HDDE manufacturer must submit a COC application to EPA for each HDDE engine family and each HDDE model year that it intends to manufacture for introduction into commerce. The COC application must include, among other things, identification of the covered engine family, a description of the HDDEs and their emission control system, and test results from a test engine showing that the engine satisfies applicable emissions standards. 40 C.F.R. §§ 86.004-21, 86.007-21, 86.094-21.

23. If, after review of the COC application and other information, EPA determines that the test engine described in the COC application meets the requirements of the CAA, EPA will issue a COC. 40 C.F.R. § 86.007-30(a)(1).

4

24.   EPA issues a COC on such terms as the EPA determines are necessary or appropriate to assure that any new HDDE covered by that COC will meet the requirements of the Act and 40 C.F.R. Part 86.  40 C.F.R. § 86.007-30(a)(2).

25.   COCs are valid for a period not to exceed one model year.  40 C.F.R. § 86.007-30(a)(2).  Therefore, a COC covers only those HDDEs produced within that model year.

26.   A model year is defined as the "manufacturer's annual production period."  If the manufacturer does not have an annual production period, "model year" means the calendar year. 40 C.F.R. § 85.2302.

27.   A specific model year must include January 1 of the calendar year for which it is designated.  40 C.F.R. § 85.2303.  A specific model year cannot include a January 1 of any other calendar year.  *Id*.

28.   The "annual production period" for all models within an engine family of HDDEs begins either when any engine within the engine family is "first produced," or on January 2 of the calendar year preceding the year for which the model year is designated, whichever is later. 40 C.F.R. § 85.2304(a).

29.   The "annual production period" ends either when the last such engine is produced, or on December 31 of the calendar year for which the model year is named, whichever is sooner. 40 C.F.R. § 85.2304(a).

30.   The date when an engine is "first produced" is the  "calendar date on which a manufacturer completes all manufacturing and assembling processes necessary to produce the first saleable unit of the designated model which is in all material respects the same as the … engine described in the manufacturer's application for certification."  40 C.F.R. § 85.2304(b).

31. A COC covers only the HDDEs produced during the annual production period. 40 C.F.R. § 85.2305(a).

32. Engines produced after December 31 of the calendar year for which the model year is named are not covered by the COC for that model year. A new COC must be obtained, even if the engines are identical to those built prior to December 31. 40 C.F.R. § 85-2305(d).

Delegated Assembly Exemption

33. Normally, the introduction of HDDEs into commerce that are not in their certified configuration is a violation of Section 203(a)(1) of the Act. 42 U.S.C. § 7522(a)(1); 40 C.F.R. § 85.1713(a) (2008).

34. In 2005, EPA enacted new regulations that allowed HDDE manufacturers to elect, provided EPA approves the request, to ship HDDEs to their vehicle manufacturing customers without first attaching the exhaust aftertreatment devices (ATDs) specified in the applicable COC application. *See* 70 Fed. Reg. 40430 (July 13, 2005); 40 C.F.R. § 85.1713 (2006) – (2008). The "delegated assembly exemption" authorizes vehicle manufacturers (as opposed to the engine manufacturers) to install the ATDs and ensure the HDDE is in its certified configuration before the vehicle is sold or leased. *Id*.

35. Through the 2008 model year, the "delegated-assembly exemption" regulations describe how to determine the model year for a delegated assembly engine. "An engine you produce under this section becomes new when it is fully assembled, except for aftertreatment devices, for the first time. Use this date to determine the engine's model year." *Id*. § 85.1713(d) (2008).

36. In 2008, EPA revised the existing delegated assembly provisions beginning with model year 2010 HDDEs. The revised regulations did not mention the delegated assembly

6

exemption provisions applicable to the 2009 model year. Despite this clerical error, the exemption remained in effect, and HDDE manufacturers, including Defendants, continued to use the delegated assembly exemption for 2009 model year engines.

Enforcement Mechanisms

37. The United States Department of Justice has authority to bring this action on behalf of the EPA Administrator under 28 U.S.C. §§ 516 and 519 and Sections 205(b) and 305(a) of the CAA, 42 U.S.C. §§ 7524(b) and 7605(a).

38. Section 204(b) of the CAA, 42 U.S.C. § 7523(b), authorizes the United States to bring a civil action to restrain violations of Section 203(a) of the CAA, 42 U.S.C. § 7522(a).

39. Section 205(b) of the CAA, 42 U.S.C. § 7524(b), authorizes the EPA Administrator to bring a civil action to assess and recover civil penalties for violations of Section 203(a)(1) of the CAA, 42 U.S.C. § 7522(a)(1).

40. Section 205(a) of the CAA, 42 U.S.C. § 7524(a), authorizes civil penalties of up to $25,000 for each violation of Section 203(a)(1) of the CAA, 42 U.S.C. § 7522(a)(1).

41. Pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, Pub. L. 101–410, Oct. 5, 1990, 104 Stat. 890, as amended, 28 U.S.C. § 2461 note, EPA increased the amount of civil penalties to $37,500 for each violation of Section 203(a)(1) of the CAA, 42 U.S.C. § 7522(a)(1), that occurs on and after January 13, 2009. 73 Fed. Reg. 75340 (Dec. 11, 2008); 40 C.F.R. § 19.4.

## GENERAL ALLEGATIONS

42. During the calendar year 2010, Defendants sold, offered for sale, introduced or delivered for introduction into commerce (or caused any of the foregoing with respect to)

numerous HDDEs ("Subject Engines"). The Subject Engines are identified in Exhibit A to this Complaint (Doc. No. 4).

43. Defendants used the delegated assembly exemption for many of the Subject Engines.

44. None of the Subject Engines were covered by a COC (nor exempt from the prohibition against selling, offering for sale, introducing or delivering for introduction into commerce engines not covered by a COC) when they were sold, offered for sale, introduced or delivered for introduction into commerce by Defendants.

45. In calendar year 2009, Defendants began manufacturing and assembling the Subject Engines.

46. As to the Subject Engines that are not covered by the delegated assembly exemption, Defendants completed manufacturing and assembling processes for these Subject Engines in 2010.

47. As to the delegated assembly Subject Engines, Defendants fully assembled the engines in 2010 (except for the ATDs, which were installed by the engine purchasers in 2010).

48. Because Defendants completed manufacturing and assembling processes for the Subject Engines in 2010 as described in Paragraphs 46 and 47, each and every engine was "produced" in 2010 and is therefore not a model year 2009 engine.

49. Additionally, each and every delegated assembly engine was "fully assembled, except for aftertreatment devices" in 2010, and is therefore not a model year 2009 engine.

50. At the time Defendants sold, offered for sale, introduced or delivered for introduction into commerce (or caused any of the foregoing with respect to) the Subject Engines, the engines did not satisfy emission standards applicable to model year 2010 engines.

## CLAIM FOR RELIEF

51.  Paragraphs 1 through 50 are incorporated herein by reference.

52.  The sale, offering for sale, introduction or delivery for introduction into commerce (or causing any of the foregoing with respect to) of each Subject Engine by Defendants without a COC constitutes a separate violation of Section 203(a)(1) of the CAA, 42 U.S.C. § 7522(a)(1).

53.  Defendants are liable for injunctive relief and civil penalties of up to $37,500 for each violation of the CAA identified in the preceding paragraph.

## <u>PRAYER FOR RELIEF</u>

Wherefore, the United States requests that this Court:

a.  Enjoin Defendants from further violations of the CAA and order them to take all steps necessary to achieve compliance and remedy the violations identified above, including through mitigation of the excess emissions that have resulted from the introduction into commerce of the Subject Engines;

b.  Assess civil penalties against Defendants of up to $37,500 for each violation;

c.  Award the United States its costs in this action; and

d.  Grant such other relief as this Court deems just and proper.

Respectfully Submitted,


_____s/ John C. Cruden_____
JOHN C. CRUDEN
Assistant Attorney General
Environment and Natural Resources
Division

Date:  July 16, 2015                      _____s/ Deanna J. Chang_____
DEANNA J. CHANG
Senior Counsel
Environmental Enforcement Section

9

US Department of Justice
805 SW Broadway, Suite 600
Portland, OR 97205
(503) 231-2128
deanna.chang@usdoj.gov

KEITH T. TASHIMA
Senior Attorney
Environmental Enforcement Section
US Department of Justice
PO Box 7611 Ben Franklin Station
Washington, DC 20001-7611
(202) 616-9643
keith.tashima@usdoj.gov

OF COUNSEL:
EVAN BELSER
US Environmental Protection Agency
1200 Pennsylvania Ave., NW
Room 1109B, Mailcode 2242A
Washington, DC 20460
belser.evan@epa.gov